UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LUCAS ROBERT-JAY MANN,

    Plaintiff,

    v.

MILLER, et al.,

    Defendants.

CAUSE NO. 3:22-CV-839-RLM-MGG

## OPINION AND ORDER

Lucas Robert-Jay Mann, a prisoner without a lawyer, filed a complaint and a motion for preliminary injunctive relief. Mr. Mann's complaint alleges that he was subjected to excessive force by Sgt. Miller, Property Officer Davis, and Lt. Rojo on March 21, 2022, at the Westville Correctional Facility. He claims Sgt. Miller called him a "little bitch" and stepped toward him as he was walking down the hall. ECF 1 at 2. Mr. Mann "react[ed] and a "brief scuffle" ensued. *Id*. Another officer tackled him, flipped him onto his back, and put him in handcuffs. While he was on the ground, Sgt. Miller ran over and punched him twelve to fifteen times. He was uncuffed and taken to a holding cell, where Sgt. Miller told him he was going to have a "full welcoming party." *Id*. at 3. Once he arrived at the restrictive housing unit, multiple officers—including Officer Davis and Lt. Rojo—punched, kicked, and choked him for twenty to thirty minutes. At some point, Officer Davis put Mr. Mann back in handcuffs and punched him in the ribs and face. Lt. Rojo hit him with his taser,

deployed the taser into his side, and kicked him in the head. Before leaving, Officer Davis urinated on his dinner tray.

After a shift change had occurred, Mr. Mann asked to see the nurse, but unnamed correctional officers laughed at him and denied that request. He alleges that despite putting in three medical requests over the next two months, he was denied medical care while he was in segregation for sixty days after the incident. He also alleges that Sgt. Miller and Property Officer Davis refused "several of my phone times, showers, and food trays" from March 21 to September 9. *Id*. at 6. He requests monetary damages and for the officers to take "tolerance classes." *Id*. at 7.

The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." Hendrickson v. Cooper, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Several factors guide the inquiry of whether a particular use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id*.

Mr. Mann alleges Sgt. Miller, Officer Davis, and Lt. Rojo maliciously punched, kicked, and/or tasered him—while he was either subdued or handcuffed—to cause him harm. Giving Mr. Mann the inferences to which he is entitled at the screening stage, he has stated plausible claims against Sgt. Miller, Officer Davis, and Lt. Rojo in their individual capacities for using excessive force against him in violation of the Eighth Amendment.

2

As to the medical claims, under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, meaning the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks, brackets, and citations omitted).

Mr. Mann alleges the post-shift change officers refused to let him see the nurse after the March 21 incident. Then, despite submitting medical requests three times over the next two months, he was refused care. Mr. Mann doesn't provide any additional details as to what care he sought, whom he sought it from, or what injuries or maladies he suffered from that needed attention during that time period. He doesn't plausibly allege any of the named defendants were personally involved in the lack of care, so he hasn't stated claims against them. *See e.g.* Mitchell v. Kallas, 895 F.3d 492, 498 (7th Cir. 2018) and Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir.

3

2009) (both noting that liability under 42 U.S.C. § 1983 is based on personal responsibility, and defendants cannot be held liable for the misdeeds of other prison staff); *see also* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (internal quotation marks and citation omitted).

Finally, the Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." Townsend v. Fuchs, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating this type of Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious." *Id*. On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Id*.

Mr. Mann's sparse allegations that Sgt. Miller and Property Officer Davis refused him phone privileges, showers, and food trays several times over the course of five months are insufficient to state a claim. Therefore, these claims will be dismissed. *See* Ashcroft v. Iqbal, 556 U.S. at 678; *see also* Swanson v. Citibank, N.A., 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original).

4

Mr. Mann also filed a motion for preliminary injunctive relief. In it, he alleges the defendants pose a threat to him because they are "still employed by WCF" and work on the same unit as he does. ECF 7 at 2. He claims Lt. Rojo and Officer Davis have verbally threatened him and "tampered with [his] food." *Id*. Specifically, he claims he has had his phone privileges, showers, and recreation time "refused" several times over the last two months and that on October 21, 2022, Officer Davis denied him his lunch and dinner food trays and made vulgar threats. He asks the court to order that he be transferred out of the Westville Correctional Facility.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that [he] definitely will win the case." Illinois Republican Party v. Pritzker, 973 F.3d 760, 763 (7th Cir. 2020). But "a mere possibility of success is not enough." *Id*. at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in

5

evaluating a motion to dismiss on the pleadings." Doe v. Univ. of S. Ind., 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[1] On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Defense Council, 555 U.S. at 22.

"Mandatory preliminary injunctions—those requiring an affirmative act by the defendant [such as transferring an inmate to a different facility]—are ordinarily cautiously viewed and sparingly issued." Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020) (internal quotation marks omitted). In the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." Westefer v. Neal, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

As set forth in detail already, Mr. Mann has been given leave to proceed on claims for excessive force against Sgt. Miller, Officer Davis, and Lt. Rojo for the events that occurred on March 21, 2022. His complaint doesn't state any other plausible claims. As such, Mr. Mann has no chance of success on the merits of the allegations

---

[1] The first step is "often decisive," and a court need not analyze the remaining elements when that is the case. Doe v. Univ. of S. Ind., 43 F.4th at 791.

6

described in his motion. *See* Winter v. Defense Council, 555 U.S. at 20 (a plaintiff must establish he is likely to succeed on the merits to receive preliminary injunctive relief); Doe v. Univ. of S. Ind., 43 F.4th at 791 (when addressing a motion for a preliminary injunction, the court need not accept the allegations as true or give the plaintiff the benefit of all reasonable inferences). Furthermore, vague allegations regarding the sporadic loss of phone privileges, showers, recreation time, and food trays—without more—are not the type of non-speculative irreparable harm the extraordinary remedy of mandatory preliminary injunctions are meant to address. Winter v. Defense Council, 555 U.S. at 22. Therefore, the motion will be denied.

For these reasons, the court:

(1) GRANTS Lucas Robert-Jay Mann leave to proceed against Sgt. Miller, Property Officer Davis, and Lt. Rojo in their individual capacities for monetary damages for subjecting him to excessive force on March 21, 2022, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sgt. Miller, Property Officer Davis, and Lt. Rojo at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(4) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information;

(5) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sgt. Miller, Property Officer Davis, and Lt. Rojo to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order; and

(6) DENIES the motion for preliminary injunctive relief (ECF 7).

SO ORDERED on November 22, 2022

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT